## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

AMY BENJAMIN,

        Plaintiff,

v.

OXFORD HEALTH INSURANCE, INC.,

        Defendant.

3:16-cv-00408 (CSH)

**July 19, 2018**

## RULING ON DEFENDANT'S AND PLAINTIFF'S CROSS MOTIONS FOR SUMMARY JUDGMENT

HAIGHT, Senior District Judge:

In this action, Plaintiff Amy Benjamin ("Benjamin") brings suit against her insurer for denying coverage of residential treatment for a mental and/or behavioral health disorder. Plaintiff asserts that the denial was wrongful because Plaintiff was entitled to coverage for the care received, under the terms of her insurance policy, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and because Defendant insurance company failed to make a full and fair evaluation of her claims, or notify her of how to obtain such an evaluation, either at the time of her initial claim or at the time of her two administrative appeals.

Plaintiff's Motion for Summary Judgment [Doc. 64] asks this Court to find that Defendant Oxford Health Insurance, Inc. ("Oxford") violated ERISA by its denial of her claim, and to award Plaintiff reimbursement of her claimed medical expenses. Defendant has filed its own Motion for Partial Summary Judgment [Doc. 61], requesting this Court to remand the disputed claim back to Defendant Oxford, for an evaluation of medical necessity and subsequent reimbursement of Plaintiff's covered medical expenses (if any). This Ruling resolves these fully briefed cross-motions.

## I.      Factual Background

The uncontested facts summarized below are taken from the Rule 56(a)(1) and Rule 56(a)(2) statements filed by Plaintiff and Defendant in support of and opposition to the pending cross motions.  *See* Docs. 62, 64-5, 67, 70.

During the relevant time period, July 24 to October 14, 2014, Plaintiff was enrolled as a beneficiary in the Techstyle Contract Fabrics Freedom PPO Plan, "the Plan," an employee benefit welfare plan.  The Plan was fully insured by Defendant Oxford, which was authorized by the Plan to administer benefits and render claim determinations, pursuant to the Plan.

### A. The Plan

The Plan provides coverage for "Outpatient and Professional Services for Mental Health Care," including "inpatient mental health care services relating to the diagnosis and treatment of mental, nervous, and emotional disorders."

The Plan specifically excludes any care that is not Medically Necessary.  Under the Plan, services are Medically Necessary only when:

> • They are clinically appropriate in terms of type, frequency, extent, site, and duration, and considered effective for Your illness, injury, or disease;
>
> • They are required for the direct care and treatment or management of that condition;
>
> • Your condition would be adversely affected if the services were not provided;
>
> • They are provided in accordance with generally-accepted standards of medical practice;
>
> • They are not primarily for the convenience of You, Your family, or Your Provider;

• They are not more costly than an alternative service or sequence of services, that is they are at least as likely to produce equivalent therapeutic or diagnostic results;

• When setting or place of service is part of the review, services that can be safely provided to You in a lower cost setting will not be Medically Necessary if they are performed in a higher cost setting. For example we will not provide coverage for an inpatient admission for surgery if the surgery could have been performed on an outpatient basis.

Benjamin 43.[1]

A determination of Medical Necessity is made by the "Utilization Review" process. Benjamin 94. The Plan's subsection on Utilization Review provides procedures by which health services are reviewed for Medical Necessity before, during, or after the provision of those services. *Id*. at 94-96. These three procedures are called, respectively, the Preauthorization, Concurrent, and Retrospective Reviews. *Id.* The Plan also provides an appeals structure for covered Plan members who wish to contest an adverse benefits determination. *Id.* at 96-102. This structure includes first- and second-level internal appeals. *Id.*

The Plan provides that, to obtain full reimbursement for certain identified services, covered individuals must obtain "preauthorization." Preauthorization is defined, by the Plan, as "[a] decision by Us prior to Your receipt of a Covered Service . . . that the Covered Service . . . is Medically Necessary." Benjamin 39.

The Plan contains an Out-of-Network Benefits Rider which explains the details of obtaining preauthorization. Under the heading "Failure to Seek Preauthorization," that Rider provides that:

---

[1] Citations to "Benjamin" are to Doc. 71-7, the complete Administrative Record pertaining to Plaintiff's claim, kept and maintained by Oxford in the ordinary course of business, Bates stamped BENJAMIN 000001 - BENJAMIN 000593. *See* Doc. 71, Am. Johnson Aff. ¶ 8.

> If You fail to seek Our Preauthorization for benefits subject to this section, We will pay an amount $500 less than We would otherwise have paid for the care, or We will pay only 50% of the amount We would otherwise have paid for the care, whichever results in a greater benefit for You. You must pay the remaining charges. We will pay the amount specified above only if We determine the care was Medically Necessary even though You did not seek Our Preauthorization. If We determine that the services were not Medically Necessary, You will be responsible for paying the entire charge for the service.

Benjamin 124. Hereinafter, this opinion will refer to this provision as the "Penalty Clause." The preauthorization requirement, and the Penalty Clause, apply to mental health services.

### B. Plaintiff 's Treatment at Caron

On July 11, 2014, Plaintiff called Oxford, and was provided with information regarding benefits and Preauthorization under the Plan.

On July 24, 2014, Plaintiff presented at Caron Renaissance ("Caron"), a facility that treats behavioral and mental health disorders, for treatment, and was admitted on an inpatient basis, for mental health treatment. She did not request Preauthorization prior to her admission.

On or about July 29, 2014, Defendant received a call from an individual who identified himself as "John" from Caron. Defendant provided John with information about coverage under the Plan.

On October 2, 2014, Plaintiff was discharged from Caron. Neither any application for Preauthorization nor any claim for coverage of the services she received from Caron between July 29 and October 2 was made during her inpatient stay.

### C. Plaintiff's Claim for Reimbursement

On October 31, 2014, Plaintiff submitted a post-care claim to Oxford for the care she received from Caron between July 29 and October 2, 2014. No clinical records were submitted with

this claim.

Oxford denied Plaintiff's claim, citing to claim code D2, which provides, "claim was denied because these services were not authorized in advance. Please refer to your Certificate of Coverage for more information."

By letter dated January 6, 2015, Plaintiff provided Oxford with medical records for the treatment she received at Caron between July 24 and October 2, 2014. By letter dated January 14, 2015, Plaintiff appealed Oxford's initial denial of her claim for that care. That letter read, in relevant part,

> on July 11, 2014, I had a phone conversation discussing what my coverage is for an in patent [*sic*] facility. The information provided to be [*sic*] is that I am responsible for $500 and am covered for my stay based on what United Healthcare[2] has deemed an appropriate day rate. It was clear that I was asking detailed questions because I needed this treatment.
>
> On July 29th John from Caron Renaissance called to discuss my benefits on my behalf.
>
> . . . .
>
> After I made the call on July 11, 2014, I contacted Caron Renaissance to check availability of a bed. Since conditions and circumstances depended on my getting immediate treatment, I moved forward with the complete understanding that I was covered from my insurance.
>
> I have already contacted Caron Renaissance to send you my medical records for my in patient treatment
>
> Please advise if you need additional information to review and approve these claims for payment.

Benjamin 228.

---

[2] Oxford is a subsidiary of non-party UnitedHealthcare.

By letter dated February 24, 2015, Defendant issued an adverse benefit determination, in response to Plaintiff's appeal, reading in part:

> We understand the appeal to state that these services should be covered because you were informed by a UnitedHealthcare (UHC) representative that they were covered services.
>
> We carefully reviewed the documentation submitted, our payment policies and the limitations, exclusions and other terms of your Benefit Plan, including any applicable Riders, Amendments, and Notices.
>
> . . . .
>
> A review of our records indicates that this claim was processed correctly. Your health benefits plan requires that you obtain pre-certification in advance for certain procedures. This service was not precertified.

Benjamin 236-37. The letter states that Defendant's "original determination remains unchanged, and the determination is upheld. Our administrative decision does not reflect any view about the appropriateness of this service(s)." *Id.*

On April 17, 2015, Plaintiff submitted a second-level appeal letter to Defendant. As grounds for reconsideration of Defendant's denial, she quoted the Penalty Clause from the Out-of-Network Rider, and argued "[t]herefore, a lack of pre authorization is not grounds for denying payment of these claims." Benjamin 257-58.

On May 21, 2015, Defendant issued a denial of Plaintiff's second-level appeal, reading, in part,

> We understand the appeal to state you are requesting coverage for the denied unauthorized services based on the additional information submitted.
>
> . . . .

> [O]ur original determination remains unchanged, and the
> determination is upheld. Our administrative decision does not reflect
> any view about the appropriateness of this service(s). . . .
>
>    A review of our records indicates that this claim was processed
> correctly. Your health benefits plan requires that you obtain
> pre-certification in advance for certain procedures. This service was
> not precertified.
>
>    **Please understand that this is your final level of internal appeal
> with us.**

Benjamin 271-72 (emphasis in the original).  At no time prior to this "final level of internal appeal" was Plaintiff's claim evaluated for Medical Necessity, as defined by the Plan.  Doc. 70 at 14.

Having exhausted her appeals with Oxford, Plaintiff brought this action.  At some point subsequent to the filing of her Complaint, Oxford "offered to accept a voluntary remand of Benjamin's claim to consider the substance of the claim and whether it meets the Plan's Medical Necessity criteria."  Def. Br. at 2.  Plaintiff has refused this offer.  *Id.*

## II.    Standard for Summary Judgment

The principles governing summary judgment motions are well established and equally applicable to the present case even though it involves the review of an administrative record.  *Smith v. Champion Int'l Corp.*, 573 F. Supp. 2d 599, 607 (D. Conn. 2008) (citing *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 575 (2d Cir. 2006)).  A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then summary judgment is appropriate.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party must "demonstrate the absence of any

material factual issue genuinely in dispute" to be entitled to summary judgment. *Am. Int'l Grp., Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (citation and internal quotation marks omitted).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute concerning the material fact is genuine. *Id.* All inferences and ambiguities must be viewed in the light most favorable to the nonmoving party. *Rogoz v. City of Hartford*, 796 F.3d 236, 245-46 (2d Cir. 2015). This is true even though the Court is presented with cross-motions for summary judgment. *Larsen v. Prudential Ins. Co. of Am.*, 151 F. Supp. 2d 167, 171 (D. Conn. 2001) (citing *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988)). "The movant's burden does not shift when cross-motions for summary judgment are before the Court. Rather, each motion must be judged on its own merits." *Id.* (citing *Assoc. of Int'l Auto Mfrs., Inc. v. Abrams*, 84 F.3d 602, 611 (2d Cir. 1996)). The nonmoving party "must present specific evidence demonstrating a genuine dispute." *Gannon v. UPS*, 529 F. App'x 102, 103 (2d Cir. 2013) (citing *Anderson*, 477 U.S. at 248) (summary order). "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) (citing *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990)).

## III.  Standard of Review Under ERISA

The Supreme Court has held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

*Firestone Tire & Rubber Co. v Bruch*, 489 U.S. 101, 115 (1989); *see also Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009); *Larsen*, 151 F. Supp. 2d at 171. Where "written plan documents confer upon a plan administrator discretionary authority to determine eligibility" the determination is "not disturb[ed] . . . unless it is arbitrary and capricious.'" *Hobson*, 574 F.3d at 82 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995)). "Though . . . no one word or phrase must always be used to confer discretionary authority, the administrator's burden to demonstrate insulation from *de novo* review requires either language stating that the award of benefits is within the discretion of the plan administrator or language that is plainly the functional equivalent of such wording." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir. 1999).

Under arbitrary and capricious review, this Court overturns an administrator's decision to deny ERISA benefits "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law. This scope of review is narrow; thus [the Court] is not free to substitute [its] own judgment for that of the insurer as if [it] were considering the issue of eligibility anew." *Guad-Figueroa v. Metropolitan Life Ins. Co.*, 771 F. Supp. 2d 207, 215 (D. Conn. 2011) (quoting *Hobson*, 574 F.3d at 83-84). "Substantial evidence 'is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance.'" *Id.* (quoting *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995)). This is much more than a "perfunctory review of the factual record," the review "must include a 'searching and careful' determination as to whether the conclusion reached by the administrator in view of the facts before it was indeed rational and not arbitrary." *Magee v. Metro. Life Ins. Co.*, 632 F. Supp. 2d 308, 317 (S.D.N.Y. 2009) (quoting *Rizk v. Long Term Disability Plan of Dun & Bradstreet Corp.*, 862 F. Supp. 783, 789 (E.D.N.Y. 1994)).

The Second Circuit has further explained that "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate." *Hobson*, 574 F.3d at 82-83 (quoting *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008)). A conflict of interest shown by plaintiff to have affected the administrator's choice is "only one of 'several different considerations' that judges must take into account when 'review[ing] the lawfulness of benefit denials.'" *Id.* (quoting *McCauley*, 551 F.3d at 133). However, where there is no evidence that the conflict actually affected the administrator's decision, a court may determine that there is no weight to be given to the conflict as a part of the court's decision. *Id.*

## IV. Discussion

### A. Appropriate Standard of Review

In this review of an administrative denial of benefits under ERISA, the Parties disagree as to the appropriate standard of review. Plaintiff asserts that Defendant's denial of coverage should be reviewed under the *de novo* standard, while Defendant maintains that the denial was a discretionary decision which should be reviewed under the arbitrary and capricious standard.

As discussed immediately *supra*, the review of an ERISA benefit denial is *de novo*, unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *Firestone Tire,* 489 U.S. at 115, in which case the review is made under the arbitrary and capricious standard. "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'" *Kinstler*, 181 F.3d at 249 (quoting

*Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir.1995)). In resolving the question of a plan's grant of such discretion, "[a]mbiguities are construed in favor of the plan beneficiary." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008).

In support of its position, Defendant cites the following Plan language, excerpted from the Plan section titled "General Provisions":

> We may develop or adopt standards that describe in more detail when We will make or will not make payments under this Certificate . . . .We may also develop administrative rules pertaining to enrollment and other administrative matters. We shall have all the powers necessary or appropriate to enable Us to carry out Our duties in connection with the administration of this Certificate.

Def. Opp. Br. at 9-10. *See also* Benjamin 116.

In *Krauss*, 517 F.3d at 622-23, the Second Circuit quoted from the same section of the Oxford Plan in upholding the district court's determination that the review of benefits denial in that case should be under the arbitrary and capricious standard:

> The ability to "adopt reasonable policies, procedures, rules and interpretations to promote" the administration of a Certificate of Coverage has been cited as an example of the requisite discretionary authority by the Fourth Circuit. It also seems to us akin to authority to "resolve all disputes and ambiguities relating to the interpretation" of a benefits plan, language that we have previously characterized as sufficient to trigger arbitrary and capricious, rather than *de novo*, review.

(citation omitted) (citing *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 523 (4th Cir.2000) and quoting *Ganton Techs., Inc. v. Nat'l Indus. Grp. Pension Plan*, 76 F.3d 462, 466 (2d Cir.1996)).

Plaintiff argues that *Krauss* is not controlling, because that case involved a dispute over whether an amount charged was "usual, customary and reasonable" ("UCR"), and, as cited by the opinion in *Krauss*, the Plan's definition of UCR charges includes additional discretionary language,

beyond the general grant of discretionary authority found in the "General Provisions." *See* Pl. Opp. Br. 8-9; *see also* 517 F.3d at 623.

Plaintiff indulges in too narrow a reading of *Krauss*. The additional grant of discretionary authority in the UCR definition provided *additional* grounds for the application of arbitrary and capricious review in that case. However, nothing in Judge Sack's opinion in *Krauss* indicates that such a secondary grant, in addition to the cited broad grant of the Plan's General Provisions, was *necessary* to establish the requisite discretionary authority, deserving of arbitrary and capricious review. In reaching this conclusion, I am joined by other district judges of this Circuit, who have applied *Krauss* to situations beyond the determination of UCR charges. *See, e.g., S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d 481, 508 (S.D.N.Y. 2015) ("the Plan provides that Oxford has discretion to deny coverage for any health care service that it determines, in its 'sole judgment,' to not be medically necessary"), *aff'd*, 644 F. App'x 81 (2d Cir. 2016); *Stern v. Oxford Health Plans, Inc.*, No. 12-CV-2379 JFB EBT, 2013 WL 3762898, at *5 (E.D.N.Y. July 17, 2013) (in an ERISA case regarding a Medical Necessity determination, "plaintiff correctly concedes that '[t]he Oxford Plan . . . gives the Plan Administrator discretion to determine benefits'"); *Roberts v. Dominion Res., Inc.*, No. 306CV1598WWE, 2008 WL 1777377, at *4 (D. Conn. Apr. 16, 2008) (Eginton, J.) ("The arbitrary and capricious standard would apply even if the Plan did not unambiguously confer 'full discretion' to the Plan administrator. The Second Circuit has declared that the authority to 'resolve all disputes and ambiguities relating to the interpretation' of a benefit plan is language that is sufficient to trigger the arbitrary and capricious standard."). *See also E.R. v. UnitedHealthcare Ins. Co.*, 248 F. Supp. 3d 348, 359 n. 4 (D. Conn. 2017) (citing *Krauss* and holding that plan language stating "We have the sole and exclusive discretion to ... [i]nterpret Benefits under the Policy,"

"[i]nterpret the other terms, conditions, limitations and exclusions set out in the Policy," and "[m]ake factual determinations related to the Policy and its Benefits" is an unambiguous grant of discretion to the plan administrator).

While ambiguities as to the question of a plan's grant of such discretion should be resolved in favor of the plan beneficiary, *Krauss*, 517 F.3d at 622, I find no such ambiguity here. Because the Plan vests discretionary authority in Defendant, I hold that Defendant's denial of benefits to Plaintiff should be reviewed by this Court under the arbitrary and capricious standard.

### B.    Was Defendant's Denial of Benefits Arbitrary and Capricious?

In the ERISA context,

> A decision is arbitrary and capricious only if it is found to be without reason, unsupported by substantial evidence or erroneous as a matter of law. Where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious.

*Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 486 (2d Cir. 2013)(citation, internal quotation marks, and alterations omitted) (quoting *McCauley*, 551 F.3d at 133; *Pagan*, 52 F.3d at 442). "A denial of a claim challenged under § 502(a)(1)(B) is arbitrary and capricious if there has been a clear error of judgment." *Miller*, 72 F.3d at 1072 (internal quotation marks omitted) (quoting *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995).

Courts have found ERISA administrators' decisions to be arbitrary and capricious where they failed to consider medical evidence or develop an adequate record. *See, e.g.*, *Godfrey v. BellSouth Telecomm., Inc.*, 89 F.3d 755, 758 (11th Cir. 1996) (denial of benefits was arbitrary and capricious where administrator "arbitrarily rejected the clear medical evidence [plaintiff] submitted without even examining her themselves or seeking the treatment notes of her doctors"); *Kunin v. Benefit Tr.*

*Life Ins. Co.*, 910 F.2d 534, 538 (9th Cir. 1990) (defining autism as "mental illness" without consulting experts or plaintiff's doctor was arbitrary and capricious); *Univ. of Wisconsin Hosp. & Clinics, Inc. v. Kraft Foods Glob., Inc. Grp. Benefits Plan*, 28 F. Supp. 3d 833, 841 (W.D. Wis. 2014) (administrator's denial of claim for stent surgery, without conducting retrospective medical necessity review, was arbitrary and capricious where plan required that, as to care that was not precertified, "[i]f the treatment was medically necessary, the costs are covered after applying a $300 penalty; if not medically necessary, the costs are not covered."); *Sansevera v. E.I. DuPont de Nemours & Co.*, 859 F. Supp. 106, 114 (S.D.N.Y. 1994) (administrator's failure to consult with independent experts or contact plaintiff's doctor rendered denial of disability benefits arbitrary and capricious).

Defendant's own brief admits that the denial of Plaintiff's two successive internal appeals, without consideration of her medical records, was in error:

> On appeal, Oxford administratively upheld its initial adverse determination, although by February 24, 2014, it had received medical records from Caron regarding Plaintiffs treatment. . . . At that time, Oxford *should have* required Plaintiff to resubmit her claims and referred those claims to a qualified medical professional to perform a Utilization Review to determine whether the treatment in question was Medically Necessary under the terms of the Plan and Oxford's level of care guidelines.

Doc. 63, Def. Br. for Summ. J., at 11 (emphasis added). A reading of the Plan confirms that Defendant's review of those appeals, limited as it was to the administrative record of Plaintiff's initial claim (which was not accompanied by medical records) was not "based on a consideration of the relevant factors." *Jordan*, 46 F.3d at 1271.

I hold that Defendant's failure to consider Plaintiff's medical records, and apply Defendant's own standards of review, including the failure to conduct a Medical Necessity review (a review that

even Defendant admits it "should have" done) amounts to "a clear error of judgment," *Miller*, 72 F.3d at 1072, and was therefore arbitrary and capricious.

### C.    Remedy

Having concluded that Defendant's denial of benefits to Plaintiff was arbitrary and capricious, because not based upon substantial evidence, and not made in accordance with the Plan, the remaining question before the Court is that of remedy. Plaintiff argues for an award of benefits, made by this Court, in the first instance, while Defendant suggests that the Court remand this case to Defendant for reconsideration.

Second Circuit precedents "make clear that even where [judges] conclude a plan administrator's finding was arbitrary and capricious, we will typically not substitute our own judgment, but rather will return the claim for reconsideration unless we conclude that there is no possible evidence that could support a denial of benefits." *Miles*, 720 F.3d at 490 (internal quotation marks omitted) (quoting *Miller*, 72 F.3d at 1074). *See also Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F. Supp. 3d 608, 633 (N.D.N.Y. 2016) ("Courts broadly agree that after review of an ERISA benefits determination, remand to a Plan Administrator or Claims Administrator is an available remedy.") (collecting cases); *Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.*, 21 F. Supp. 2d 284, 302 (S.D.N.Y. 1998) (Mukasey, J.) ("If a decision was arbitrary and capricious, the court should remand the matter to the fiduciary with instructions to consider additional evidence.") (collecting cases).

Here, as explained *supra*, no substantive evaluation of Plaintiff's claim has yet been made. While Defendant has been in possession of Plaintiff's medical records since January 2015, it is undisputed that Defendant has made no substantive Medical Necessity review of those records. *See*

Def. R. 56(a)1 Stmt. ¶¶ 50-51; Pl. R. 56(a)2 Stmt. ¶¶ 50-51.

Plaintiff argues that remand is inappropriate, because Defendant has, by its failure to conduct a review of her medical records, waived the issue of Medical Necessity. *See* Pl. Br. 8 ("Because Oxford had the opportunity to make a medical necessity determination, and chose not to do so, it has waived the opportunity to raise that defense now."). "Where a plan administrator raises new arguments in federal court that it did not present during the administrative process, a court must consider how the waiver doctrine applies." *Munnelly v. Fordham Univ. Faculty & Admin. HMO Ins. Plan*, No. 16 CIV. 5632 (PGG), 2018 WL 1628839, at *17 (S.D.N.Y. Mar. 30, 2018) (Gardephe, J.) (citing *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 381 (2d Cir. 2002)). The waiver doctrine, adopted to ERISA litigation from state-law litigation of contested insurance claims, provides that "[A]n insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense." *State of N.Y. v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991). *See also Lauder*, 284 F.3d at 382 (quoting *AMRO Realty*, 936 F.2d at 1431, and applying its waiver analysis to ERISA claim).

The waiver doctrine, adopted from state insurance law, has an important caveat – "when insurance coverage is denied, where the issue is the existence or nonexistence of coverage . . . the doctrine of waiver is simply inapplicable." *Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 288 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698 (N. Y. 1980)). In *Juliano*, 221 F.3d 279, the plaintiff argued that an ERISA plan administrator could not raise lack of medical necessity as a defense to a suit for wrongful denial of coverage, where that basis for denial had not been raised at the administrative denial-of-benefits

determination. Judge Sack rejected this application of the waiver doctrine, reasoning that "[m]edical necessity is required for the Julianos' reimbursement under the terms of the Contract and is therefore analogous to 'the existence or nonexistence of coverage' of an insurance policy under insurance law." 221 F.3d 288 (quoting *Albert J. Schiff Assocs.*, 51 N.Y.2d at 698). *See also Munnelly*, 2018 WL 1628839, at *21 ("Because the issue here – coverage for out of network inpatient mental health care – goes to the 'existence or nonexistence of coverage' – common law principles of waiver do not apply").

The Plan stipulates that "Care Must be Medically Necessary. We Cover benefits described in this Certificate as long as the health care service, procedure, treatment, test, device, Prescription Drug or supply (collectively, 'service') is Medically Necessary." Benjamin 43. The Parties agree that "[t]he Plan only provides coverage for care that is deemed Medically Necessary." Def. R. 56(a)1 Stmt. ¶ 8; Pl. R. 56(a)2 Stmt. ¶ 8. It is undisputed, and, in light of the Plan language, beyond dispute, that, as in *Juliano*, Medical Necessity is prerequisite to coverage under the Plan.

Because Medical Necessity is a prerequisite for coverage, to deem the question of Medical Necessity waived would have the result of expanding coverage beyond the terms of the Plan. Therefore, *Juliano* controls, and the doctrine of waiver does not apply.

Defendant's denial of benefits to Plaintiff was arbitrary and capricious. However, where no substantive evaluation of Plaintiff's claim has been made, particularly as to its Medical Necessity, this Court is unable to find that Plaintiff is entitled to an award of benefits in the first instance. Because I do not find "that upon a more complete record a reasonable fiduciary would necessarily have to grant the claim or that a remand to the [plan administrator] would be a useless formality," *Miller*, 72 F.3d at 1072, remand is the proper course of action. *See, e.g., Easter*, 217 F. Supp. 3d at

634 ("the Court has found violations of both ERISA and the Plan's terms. There is, however, insufficient information in the administrative record upon which to determine whether Plaintiffs are entitled to benefits . . . . Remand of Plaintiffs' benefits claims . . . will afford all parties the opportunity for a full and fair review, with expert consideration of all relevant evidence under the appropriate standards."); *Univ. of Wisconsin Hosp.*, 28 F. Supp. 3d at 842 (remand "is appropriate because the record is unclear on whether [the plan beneficiary's] procedure was medically necessary.").

For the foregoing reasons, I hereby REMAND Plaintiff's claims to Defendant, for a full and fair review. Defendant's review need not be limited to the question of Medical Necessity, and this opinion does not purport to guide or limit Defendant's full and fair review of Plaintiff's claims.

I note that Oxford's administrative rejection of Plaintiff's claim for inpatient treatment was based solely on the stated basis that "Your health benefits plan requires that you obtain pre-certification in advance for certain procedures. This service was not precertified." Benjamin 272. While the issue has not been briefed, and the Court does not decide it in this Ruling, *quaere* whether a Plan member's failure to obtain pre-certification for a procedure entitles Oxford to deny the resulting claim entirely. That draconian interpretation would appear to conflict with the Penalty Clause in the Plan, which provides that if an insured fails to seek "preauthorization" for covered benefits, Oxford "will pay an amount $500 less than We would otherwise have paid for the care, or We will pay only 50% of the amount we would otherwise have paid for the care, *whichever results in a greater benefit for you*." *Id.* at 124 (emphasis added). This language, limiting the financial effect upon an insured who fails to obtain pre-authorization or pre-certification of a procedure, seems plain enough, quite apart from the rule that provisions in Plans such as these are interpreted in favor of the

insureds they cover.

However, this subject does not require further discussion, because Oxford makes it clear in its motion papers that on remand to Oxford, Plaintiff's claim will not be rejected solely because of her failure to obtain preauthorization of the inpatient case whose cost she seeks to recover. Oxford's brief [Doc. 63] contends at 17 that the "appropriate equitable relief in this case is that Benjamin's claims be remanded to Oxford for consideration of the issue of Medical Necessity in the first instance." That is the relief the Court grants in this Ruling.

**V. Attorney's Fees**

Plaintiff's action in this Court sought, in addition to the monetary award of health insurance benefits, "[p]ursuant to 29 U.S.C. § 1132(g),[3] payment of all costs and attorneys' fees incurred in pursuing this action." Compl., Doc. 1, at 7. This prayer for relief was incorporated into Plaintiff's Motion for Summary Judgment. *See* Pl. Br. for Summ. J., Doc. 64-1, at 10. The briefs on the instant motions do not address that issue in any detail. This Ruling gives preliminary consideration to Plaintiff's effort to recover her attorney's fees.

"[I]n light of the ERISA fee provision's statutory purpose of vindicating retirement rights, granting a prevailing plaintiff's request for fees is appropriate absent some particular justification for not doing so." *Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 47 (2d Cir. 2014) (Cabranes, J.) (citation and internal quotation marks omitted) (quoting *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 298 (2d Cir. 2004); *Birmingham v. SoGen-Swiss Int'l Corp. Ret. Plan*, 718 F.2d 515, 523 (2d Cir. 1983)).

---

[3] That subsection of ERISA provides, in relevant part, "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

[W]hether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion. Although a court may, without further inquiry, award attorneys' fees to a plaintiff who has had "some degree of success on the merits," *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 n. 8 (2010), also made clear that courts retain discretion to "consider [ ] five [additional] factors . . . in deciding whether to award attorney's fees." Those five factors, known in this Circuit as the "*Chambless* factors" are:

(1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Donachie*, 745 F.3d at 46 (emphasis in the original) (citations omitted) (quoting *Hardt*, 560 U.S. at 249 n. 1).  *See also Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987)).

The threshold inquiry, then, is whether Plaintiff achieved "some degree of success on the merits."  "The *Hardt* Court explicitly declined to decide whether a remand order, without more, constitutes 'some success on the merits.' Nor has the Second Circuit decided this question. Many other courts, however, have found 'remand simpliciter' to constitute 'some success on the merits.'" *Dwinnell v. Fed. Express Long Term Disability Plan*, No. 3:14-CV-01439 (JAM), 2017 WL 1371254, at *1 (D. Conn. Apr. 14, 2017) (Meyer, J.) (citation and internal quotation marks omitted) (collecting cases).  *See also Gross v. Sun Life Assurance Co. of Canada*, 763 F.3d 73, 77 (1st Cir. 2014); *McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 546-47 (6th Cir. 2011); *Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, No. 514CV1403BKSTWD, 2017 WL 3267922, at *2 (N.D.N.Y. July 31, 2017); *Schuman v. Aetna Life Ins. Co.*, No. 3:15-CV-01006 (SRU), 2017

WL 2662191, at *4 (D. Conn. June 20, 2017) ("most courts that have addressed the issue have held that a remand to the plan administrator for review of a claimant's entitlement to benefits is sufficient success on the merits to establish eligibility for fees under section 1132(g)(1)") (collecting cases); *Dimopoulou v. First Unum Life Ins. Co.*, No. 1:13-CV-7159 (ALC), 2017 WL 464430, at *1 (S.D.N.Y. Feb. 3, 2017) ("Courts in the Second Circuit have awarded fees to prevailing plaintiffs in ERISA actions based solely on achieving a remand for further consideration by the administrative body.") (collecting cases); *Valentine v. Aetna Life Ins. Co.*, 2016 WL 4544036, at *4 (E.D.N.Y. 2016).

I am convinced by the reasoning of the other courts which have found remand simpliciter sufficient to qualify as "some degree of success on the merits."[4]  Plaintiff has obtained a remand from this Court, and I therefore hold that she has achieved "*some* success on the merits," sufficient to make her eligible for an award of fees under ERISA.  This is so even where, as here, Defendant does not object to the remand order.  *See, e.g., Schuman*, 2017 WL 2662191, at *4 ("By securing a remand after the defendants denied him benefits, Schuman achieved a result that was more favorable to him – and less favorable to the defendants – than the status quo.")  The Defendant's offer to accept a voluntary remand of Plaintiff's claim, an offer Plaintiff has refused, was made at some time after the filing of this suit.  Defendant lays great store by the fact that such an offer was made "prior to most of the substantive litigation in this action."  Def. Opp. Br. at 2; Def. Reply Br. at 4.  However, the inference I draw from the series of events, by which Defendant denied Plaintiff's final administrative

---

[4] In the words of Judge Meyer of this District, "[t]hat is not to say that I cannot imagine that some kinds of remands might be for highly technical or clerical reasons, such that the act of remand might not qualify as 'some degree of success on the merits.' But that is not the nature of the remand here." *Dwinnell*, 2017 WL 1371254 at *2.

appeal, Plaintiff then filed suit, and Defendant then offered to accept a "voluntary remand," is that it was Plaintiff's retention of counsel and filing of this action which precipitated the "voluntary" remand offer. In this instance, where, by Defendant's own admission, the administrative appeals process failed Plaintiff, some award of fees is consistent with the aims of ERISA.

I will consider the question of attorney's fees in the present case if and when Plaintiff submits a quantified claim in the proper form. "Proper form" requires that Plaintiff's attorney comply fully with the Second Circuit's detailed instructions in *New York Ass'n of Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir 1983). If Plaintiff decides to press such a claim, it must be submitted not later than **August 2, 2018**, and will then be subject to further submissions in response by Defendant.

## VI. Conclusion

In summary, because the Court concludes that Defendant's decision to deny coverage for residential treatment to Plaintiff is not supported by substantial evidence, and does not follow the plain language of the Plan, the Court grants summary judgment, in part, to Plaintiff. Because I do not find that this situation is one where there is "no possible evidence that could support a denial of benefits," *Miles*, 720 F.3d at 490, remand to the plan administrator, for full and fair evaluation of the claims, in the first instance, is the appropriate remedy.

Accordingly, Plaintiff's Motion for Summary Judgment [Doc. 64] is GRANTED in part, and DENIED in part, and Defendant's Motion for Partial Summary Judgment [Doc. 61] is GRANTED.

If Plaintiff desires to press her claim for costs and fees, she must file supporting papers not later than **August 2, 2018**. Plaintiff is reminded that any claim for attorneys' fees must comply with the Second Circuit's decision in *Carey*, 711 F.2d at 1148, which requires that the documentation

include contemporaneous records "for each attorney, the date, the hours expended, and the nature of the work done." Plaintiff should also note that the Court is required to conduct a "'lodestar' analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate." *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 108 (2d Cir. 2014).

Defendant is entitled to oppose any claim for costs and fees, in whole or in part. Any opposition must be filed within fourteen (14) calendar days of the service of Plaintiffs' claim upon them.

The foregoing is SO ORDERED.

Dated:  New Haven, Connecticut
        July 19, 2018

   */s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge