UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMY BENJAMIN,<br><br>                Plaintiff,<br>v.<br><br>OXFORD HEALTH INSURANCE, INC.,<br><br>                Defendant. | Civil Action No.<br>3:16-cv-00408 (CSH)<br><br>**JANUARY 8, 2019** |

### RULING ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

**HAIGHT, Senior District Judge:**

This is an ERISA action. Plaintiff Amy Benjamin sued Defendant Oxford Health Insurance, Inc. ("Oxford") for denying coverage of Benjamin's residential treatment for a mental and/or behavioral health disorder. Benjamin asserted in her complaint that Oxford's denial of coverage was wrongful because she was entitled to coverage for the care received under the terms of her ERISA-governed policy issued by Oxford.

On July 19, 2018, the Court decided cross-motions for summary judgment in a Ruling reported at *Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-cv-00408 (CSH), 2018 WL 3489588 (D. Conn. July 19, 2018) ("the July 19 Ruling"), familiarity with which is assumed. Plaintiff Benjamin partially prevailed in the July 19 Ruling, to the extent that the Court remanded the case to Oxford for that full and fair evaluation of Plaintiff's claim which the Court held Oxford had theretofore failed to give. The July 19 Ruling also gave preliminary consideration to Plaintiff's request for attorney's fees in her complaint, and the Court directed Plaintiff to file documents supporting her claim for attorney's fees and costs. *Id.* at *10–11.

The case is again before the Court, on Plaintiff's renewed motion, based upon additional

submissions. This Ruling resolves that motion, [Doc. 77]. For the reasons that follow, the Court declines to award Plaintiff the amount she requests and directs payment by Defendant of a lesser amount.

## I. BACKGROUND

The theory of Benjamin's action against Oxford is that Oxford failed to make a full and fair evaluation of her claims, either at the time of her initial claim or at the time of her two administrative appeals. *Benjamin*, 2018 WL 3489588, at *1.

The Court's July 19 Ruling granted Benjamin summary judgment on that assertion, notwithstanding Oxford's protestations of rectitude. The Ruling remanded Plaintiff's insurance claims to Defendant for a full and fair evaluation in the first instance. In that Ruling's relatively brief concluding discussion on attorney's fees, the Court held that Plaintiff "has achieved some success on the merits, sufficient to make her eligible for an award of fees under ERISA. This is so even where, as here, Defendant does not object to the remand order." *Id.* at *11. The Court reasoned that "where, by Defendant's own admission, the administrative appeals process failed Plaintiff, some award of fees is consistent with the aims of ERISA." *Id.*

However, the July 19 Ruling, which is the law of the case, did not complete its analysis of whether Plaintiff was entitled to any attorney's fees, and, if so, the amount of the recoverable fees in practice remained for decision. This was due to Plaintiff not having filed the required supporting papers. *Id.* Plaintiff consequently moved for attorney's fees and costs, on the basis of additional submissions. Doc. 77. Defendant opposes the motion. The attorney's fee issue is now ripe for the Court's decision.

## II. STANDARD OF REVIEW

"The district court retains discretion to determine . . . what constitutes a reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998)); *see also Morgan Guar. Trust Co. v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992) (noting that 28 U.S.C. § 1447(c) "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees"). "However, this discretion is not unfettered," and "the district court must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Millea*, 658 F.3d at 166.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The resulting amount "is only presumptively reasonable; it is still within the court's discretion to adjust the amount upward or downward based on the case-specific factors." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 3:10-CV-60, 2012 WL 4092515, at *1 (D. Conn. Sept. 17, 2012) (citation and internal quotation marks omitted).

Judge Newman's opinion in *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983), declares this Circuit's governing evidentiary requirements for a party applying to recover attorney's fees from someone else:

> All applications for attorney's fees, whether submitted by profit-making or non-profit lawyers, for any work done after the date of this opinion should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done.

*Id.* at 1154. The Second Circuit subsequently clarified its use of the word "normally" in *Carey*,

holding that while it "indicates that we intend to leave the district courts with some limited discretion to make exceptions to the hard-and-fast rule," *Carey* nonetheless "sets out unequivocally that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010). "In other words, *Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases." *Id.* In the case at bar, Plaintiff's additional submissions satisfy the requirements of *Newman* and its progeny.

"Attorney's fees must be reasonable in terms of the circumstances of the particular case[.]" *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999) (citing *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)). In determining a fee award, the Court is mindful that "attorney's fees are to be awarded 'with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees.'" *Carey*, 711 F.2d at 1139 (quoting *Beazer v. New York City Transit Auth.*, 558 F.2d 97, 101 (2d Cir. 1997)).

### III. <u>DISCUSSION</u>

**A.     Attorney's Fees and Costs under ERISA**

It is within the discretion of the Court to award attorney's fees and costs under ERISA. 29 U.S.C. § 1132(g) (2016); *see also Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 47 (2d Cir. 2014) ("[I]n light of the ERISA fee provision's statutory purpose of vindicating retirement rights, granting a prevailing plaintiff's request for fees is appropriate absent some particular justification for not doing so." (citation and internal quotation marks omitted)). Having begun examining this issue in the previous Ruling, I will first discuss what has already been decided and then continue the analysis here.

The July 19 Ruling outlined factors the Court must or can consider when determining when

a plaintiff is entitled to attorney's fees and costs pursuant to 29 U.S.C. § 1132(g):

> [W]hether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion. Although a court may, without further inquiry, award attorneys' fees to a plaintiff who has had "some degree of success on the merits," *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 n.8 (2010), also made clear that courts retain discretion to "consider [ ] five [additional] factors . . . in deciding whether to award attorney's fees." Those five factors, known in this Circuit as the "*Chambless* factors" are:
>
> (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-cv-00408 (CSH), 2018 WL 3489588, at *10 (D. Conn. July 19, 2018) (quoting *Donachie*, 745 F.3d at 46 (emphasis in the original) (citations omitted)). *See also Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987)).

Under this Second Circuit protocol for the awarding or denying of attorney's fees, a district court first considers the threshold question of whether the party *can* recover fees at all. To recover *any* fees, an ERISA plaintiff like Benjamin must show she has achieved "some degree of success on the merits" of the litigation. A plaintiff who does not make that showing is not entitled to recover attorney's fees in any amount: that is the mandatory end to the matter. A plaintiff who demonstrates the requisite degree of success on the merits *can* make a claim for attorney's fees: this Circuit's non-mandatory *Chambless* factors then kick in. In those circumstances, the district court has the discretion to award attorney's fees or decline to do so, and to fix the amount if fees are awarded.

The question has changed, in other words, from whether the party *can* recover attorney's fees to whether it *should* do so.

The July 19 Ruling decided in Plaintiff's favor the threshold question of whether she had obtained some degree of success on the merits, thereby resolving the question of whether she *can* obtain attorney's fees. Resolving the questions of whether she *should* be awarded attorney's fees, and, if so, in what amount is the subject of Plaintiff's present renewed motion for attorney's fees and costs. Defendant's opposing brief on the present motion begins with the contention that, weighing the *Chambless* factors, "no fees should be awarded to Plaintiff. Initially, Plaintiff's refusal to accept Oxford's offer of a voluntary remand required the parties to engage in unnecessary litigation based on her improper interpretation of the law of waiver, which should not be rewarded with an award of attorney's fees." Doc. 85 ("Def. Mem.") at 6.

This argument by Oxford, made in the *Chambless* factors context and based on Defendant's purported consent to a voluntary remand of Plaintiff's disability claim, was first articulated by Oxford during the prior summary judgment motions, in an effort to persuade the Court that Benjamin had not achieved any degree of success and consequently was not entitled to any attorney's fees. The July 19 Ruling explicitly rejects that contention. Judge Underhill reached the same conclusion on the same point in *Schuman v. Aetna Life Ins. Co.*: "The defendants suggest that because they too asked for remand, 'neither side prevailed' and Schuman achieved only a 'purely procedural victory' . . . . By securing a remand after the defendants denied him benefits, Schuman achieved a result that was more favorable to him—and less favorable to the defendants—than the status quo." No. 3:15-cv-01006 (SRU), 2017 WL 2662191, at *4 (D. Conn. June 20, 2017). Judge Underhill then applied the *Chambless* factors to determine the amount of the recoverable attorney's fees. *Id.* at *5.

Judge Meyer reached the same conclusion in *Dwinnell v. Fed. Express Long Term Disability Plan*, No. 3:14-cv-01439 (JAM), 2017 WL 1371254 (D. Conn. Apr. 14, 2017), which also arose in circumstances indistinguishable from those at bar. Judge Meyer's analysis is persuasive:

> That is not to say that I cannot imagine that some kinds of remands might be for highly technical or clerical reasons, such that the act of remand may not qualify as "some degree of success on the merits." But that is not the nature of the remand here. The remand here for vocational analysis is essential to a full and fair consideration of plaintiff's claim. It is sufficient to constitute "some success on the merits" for plaintiff.

*Id*. at *2. Judge Meyer's description mirrors the circumstances in the case at bar. Judge Meyer went on to calculate the amount of the *Dwinnell* recoverable attorney's fees in the light of the *Chambless* factors. *Id.*

Having urged to no avail the nature of the remand as an absolute bar to any attorney's fees for Benjamin, Oxford dusts off the same argument and urges it again, this time as a *Chambless* factor discretionary basis for the Court to deny any fees. I find the argument no more persuasive in this context than in the earlier one. I turn to the *Chambless* factors.

The first *Chambless* factor looks to whether a defendant acted culpably or in bad faith, which have distinct standards. *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 450 (2d Cir. 2006). The Court need not consider "bad faith" to conclude that this factor is satisfied. *Id.* at 451. Indeed, Plaintiff does not assert that Defendant acted in bad faith, only that it was "culpable" in denying Plaintiff's insurance claim. Doc. 77-1 ("Pl. Mem.") at 4. In *Slupinski v. First Unum Life Ins. Co*, 554 F.3d 38 (2d Cir. 2009), the Second Circuit said:

> As to the first *Chambless* factor, we note that "culpability" and "bad faith" are distinct standards. Thus, to win an award of attorney's fees under ERISA a party need not prove that the offending party acted in bad faith. "Culpable conduct" is commonly understood to mean

> conduct that is blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault.

554 F.3d at 48 (citations and some internal quotation marks omitted). In this imperfect world, where human rather than angelic nature is at issue, an individual may be censured or blamed for conduct that is faulty, albeit undertaken in good (if mistaken) faith.

This Court had held that "Defendant's failure to consider Plaintiff's medical records, and apply Defendant's own standards of review, including the failure to conduct a Medical Necessity review (a review that even Defendant admits it 'should have' done) amounts to 'a clear error of judgment, and was therefore arbitrary and capricious." *Benjamin*, 2018 WL 3489588, at *8 (citation omitted). Defendant argues that a finding of arbitrary and capricious conduct does not equate to culpable conduct, and, moreover, Defendant had acknowledged its error.

Contrary to Defendant's contention, courts have routinely held that arbitrary and capricious actions like those of Defendant do amount to culpability. *See Fairbaugh v. Life Ins. Co. of N. America*, 737 F. Supp. 2d 68, 89 (D. Conn. 2010) ("Defendant is sufficiently culpable, notwithstanding its protestations of the absence of bad faith, for arbitrarily terminating Plaintiff's long term disability benefits that an award of Plaintiff's reasonable attorney's fees is equitable."); *Zervos v. Verizon New York, Inc.*, No. 01 CIV. 0685 (GBD) (RLE), 2002 WL 31553484, at *2 (S.D.N.Y. Nov. 13, 2002) ("[C]ourts usually find that a party is culpable when they act 'arbitrarily and capriciously."); *Sansevera v. E.I. DuPont de Nemours & Co.*, 859 F. Supp. 106, 117 (S.D.N.Y. 1994) (granting attorney's fees where Board's arbitrary and capricious actions forced Plaintiff to bring suit "in order to receive the fair consideration to which he is entitled"). More to the point, courts have determined that "attorney's fees were appropriate where a plan administrator 'failed to engage in a fair and open-minded consideration of [the] claim.'" *Johnson v. Guardian Life Ins. Co. of*

*America*, No. 3:16-cv-1141 (MPS), 2018 WL 4623025, at *2 (D. Conn. Sept. 26, 2018) (quoting *Paese*, 449 F.3d at 451); *see also Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000) (stating defendant was culpable when it "violated ERISA").

The lack of a fair evaluation was the precise issue in the case at bar, and the merits issue upon which plaintiff prevailed. Also, as Plaintiff points out, the case upon which Defendant relies is an outlier. Doc. 88 ("Pl. Reply") at 3; *Roganti v. Metro. Life Ins. Co.*, 972 F. Supp. 2d 658, 675 (S.D.N.Y. 2013), *rev'd on other grounds*, 786 F.3d 201 (2d Cir. 2015) ("The circumstances of Roganti's claim and the issues presented in this case were highly unusual. They required the Plan Administrator to make determinations that fell outside his specialized experience and expertise."). Defendant, as a medical insurance provider, is clearly knowledgeable about medical insurance.

As for Defendant's acknowledgment of its error, I have reiterated *supra* the July 19 Ruling's conclusion that Defendant's offer to accept a voluntary remand of Plaintiff's claim does not justify denying Plaintiff any attorney's fees. In the *Chambless* factor analysis, this circumstance does not count for much. Defendant only offered to agree to a remand after Plaintiff retained counsel and filed this action. *Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-cv-00408 (CSH), 2018 WL 3489588, at *11 (D. Conn. July 19, 2018) ("In this instance, where, by Defendant's own admission, the administrative appeals process failed Plaintiff, some award of fees is consistent with the aims of ERISA."). Defendant also blames Plaintiff for "needless litigation to arrive at the same exact result [Defendant] offered on [December 29, 2016]," when Plaintiff rejected Defendant's offer to accept a voluntary remand. Def. Mem. at 11. However, it could be equally argued that this whole "needless" lawsuit could have been avoided had Defendant fully and fairly evaluated Plaintiff's

insurance claim in the first instance, or even after Plaintiff's subsequent internal appeals. Defendant's argument still holds no water, and the first *Chambless* factor favors Plaintiff here.

The parties do not appear to dispute the second factor: whether Defendant has the ability to satisfy an attorney's award. Defendant only notes that this is the "least important factor" to consider and that "while a defendant's inability to pay an award weights in its favor, its ability to pay generally is neutral in effect." *Id.* at 12 (citing *Alfano v. CIGNA Life Ins. Co. of New York*, No. 07 CIV. 9661 (GEL), 2009 WL 890626, at *2 (S.D.N.Y. Apr. 2, 2009) and *Park v. Trustees of 1199 SEIU HealthCare Emps. Pension Fund*, 418 F. Supp. 2d 343, 359 (S.D.N.Y. 2005)). Although it is likely that Defendant as a large insurance company has the ability to pay, this factor does not weigh heavily in the Court's analysis.

As for the third factor of whether a fee award will have a deterrent effect, parties have opposing views. Defendant again places much emphasis on the acknowledgment of its own error and offer to accept Plaintiff's voluntary remand. Def. Mem. at 12–13. This point is also unpersuasive as applied to the deterrence factor. Deterrence looks to the future, as applied to the Defendant and other companies like the Defendant. *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47–48 (2d Cir. 2009) (upholding district court's conclusion that "an award of fees would have a deterrent effect" because it will "likely deter First Unum and other administrators"); *Schuman v. Aetna Life Ins. Co.*, No. 3:15-cv-01006 (SRU), 2017 WL 2662191, at *6 (D. Conn. June 20, 2017) (awarding attorney's fees, where the violation was due to "incompetence" rather than bad faith, would likely "incentivize the defendants to improve their procedures to avoid the regulation in the future"). While companies should admit to their mistakes, whether they have done so in one case

has little to do with fixing the policies or practices that led to such mistakes in the first place. This factor also favors the Plaintiff.

The fourth factor looks beyond the deterrent effect, asking if the case confers a common benefit to ERISA participants and beneficiaries or seeks to resolve a significant legal question regarding ERISA. Plaintiff concedes that this factor does not weigh in her favor as it was "never designed" to confer a common benefit. Pl. Reply at 7. However, as Plaintiff points out, this does not preclude an award of attorney's fees. *Id.* (citing *Locher v. Unum Life Ins. Co. of America*, 389 F.3d 288, 299 (2d Cir. 2004), *Slupinski*, 554 F.3d at 48, 56). Thus, this factor favors Defendant, but it carries little weight in the Court's analysis. *See also Schuman*, 2017 WL 2662191, at *6 (noting "common benefit" is not essential under *Chambless*).

The fifth and final factor considers the relative merits of the parties' positions, which does weigh heavily in the *Chambless* test. *See Slupinski*, 554 F.3d at 48. On one hand, the Court had determined that Defendant's failure to consider Plaintiff's medical records and apply its own standards of review were arbitrary and capricious. *Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-cv-00408 (CSH), 2018 WL 3489588, at *8 (D. Conn. July 19, 2018). On the other hand, the Court agreed with Defendant that the appropriate remedy was to voluntarily remand Plaintiff's insurance claims to Defendant. *Id.* at *9. However, selecting the proper remedy was not the central issue of this case. Defendant's actions in reviewing Plaintiff's insurance claim were the central cause of complaint, and, for reasons set forth in the Court's July 19 Ruling, Plaintiff had the upper hand on this issue. This factor favors the Plaintiff.

The Court has now confirmed that Plaintiff has achieved "some degree of success of the merits" and that three of the five *Chambless* factors also support awarding attorney's fees to Plaintiff.

Accordingly, Plaintiff has shown that she should be entitled to attorney's fees, and the Court will now proceed to determine exactly how much Defendant owes to Plaintiff for attorney's fees and costs.

**B.      Reasonableness of Attorney's Fees**

The Court must conduct a "'lodestar' analysis, which calculates reasonable attorney's fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate." *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 108 (2d Cir. 2014). *See also, e.g., Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) ("In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable fee.'") (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). In general, the "lodestar looks to the prevailing market rates in the relevant community." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). When calculated in this manner, such fees are presumptively reasonable, and generally only subject to enhancements in "rare" and "exceptional" circumstances. *Id*. at 551–54.

As to the applicable hourly rate, the court "retains discretion to determine what constitutes a reasonable fee" by attorneys. *Parris v. Pappas*, 844 F. Supp. 2d 262, 265 (D. Conn. 2012) (quoting *Millea*, 658 F.3d at 166) (ellipsis omitted). "[A] reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation" of a particular kind of case. *Parris,* 844 F. Supp. 2d at 266 (quoting *Perdue*, 559 U.S. at 552). *See also Parrish v. Sollecito*, 280 F. Supp. 2d 145, 169–70 (S.D.N.Y. 2003) ("A reasonable starting point for determining the hourly rate for purposes of a lodestar calculation is the attorney's customary rate.") (collecting cases).

Furthermore, in general, a reasonable hourly rate is "one based on prevailing fees in the district where the case is litigated," which in this case is the District of Connecticut, and/or "the rate

a paying client would be willing to pay." *Parris*, 844 F. Supp. 2d at 266 (citation and internal quotation marks omitted). *See also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (reasonable hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); *Arbor Hill Concerned Citizens v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) ("The reasonable hourly rate is the rate a paying client would be willing to pay[,]. . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.").

In calculating the reasonable hourly rate, the court also examines such factors as the level of experience of an attorney and nature of the case in assessing reasonableness of his or her fee. *Parris*, 844 F. Supp. 2d at 266–67 (holding $275 per hour "a reasonable rate for an attorney with more than eleven years of legal experience" and "$200 per hour" a "reasonable rate for an attorney with four years of experience"). *See also Sony Elecs., Inc. v. Soundview Techs., Inc.*, 389 F. Supp. 2d 443, 447 (D. Conn. 2005) ("The 'lodestar' figure should be in line with those [rates] prevailing in the community for similar services by *lawyers of reasonably comparable skill, experience, and reputation*.") (citation and internal quotation marks omitted) (emphasis added).

The Court further considers the number of hours for which fees will be awarded to decide whether the time was "usefully and reasonably expended" by counsel. *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). *See also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("The court should include the number of hours claimed by plaintiffs' attorneys that are supported by time records" and "that are not excessive or duplicative.").

Lastly, once the court has determined a "presumptively reasonable fee, the final step in the fee determination is to inquire whether an upward or downward adjustment is required." *Parris*, 844 F. Supp. 2d at 270. In evaluating whether a fee award should be adjusted, the Supreme Court has held that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436).

In sum, as set forth in its prior Ruling, the court employs the lodestar approach and determines a "presumptively reasonable fee" by engaging in a "four-step process":

> "[T]he court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award."

*Parris*, 844 F. Supp. 2d at 266 (quoting *Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010)).

Plaintiff's attorneys have requested fees at a rate of $700 per hour for Partner Lisa Kantor and $600 per hour for Senior Associate Peter Sessions. Doc. 77-2 ("Kantor Decl.") ¶ 18. Perhaps acknowledging that these rates are above those in Connecticut (Plaintiff's counsel firm, Kantor & Kantor LLP, is based in Los Angeles, California), Plaintiff argues that departure from the forum rule is warranted because counsel has "special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise." Pl. Reply at 9 (quoting *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009), for exceptions to the forum rule (internal quotations omitted)). Specifically, the firm has speciality in representing plaintiffs in ERISA cases concerning eating disorders. Pl. Reply at 9.

To depart from the forum rule, Plaintiff must show that "use of in-district counsel would produce a substantially inferior result." *CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-CV-01897

(CSH), 2017 WL 1399630, at *4 (D. Conn. Apr. 18, 2017) (citations omitted). *See also Simmons*, 575 F.3d at 175 ("We now hold that, when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.").

As evidence of how limited this sort of expertise is, Plaintiff claims that only three cases in this district involve or involved ERISA and eating disorders, and Kantor & Kantor LLP serves or has served as counsel in them all. Pl. Reply at 9. However, Plaintiff has not sufficiently demonstrated why eating disorder-specific expertise was required for this case. Defendant had denied Plaintiff's insurance claims on the basis that it had not been preauthorized. *Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-cv-00408 (CSH), 2018 WL 3489588, at *3–4 (D. Conn. July 19, 2018). The type of insurance claim Plaintiff had submitted for reimbursement was irrelevant to the lawsuit. Plaintiff has not overcome the burden of demonstrating that selecting Kantor & Kantor LLP had likely produced better results because they specialized in ERISA and eating disorders, and so the Court declines to depart from the forum rule based on the ERISA sub-speciality claimed by Plaintiff. However, the Court does recognize that having counsel within the ERISA field likely produced a better result over a general litigator.

Connecticut has a number of attorneys who specialize in ERISA. Seasoned partners and senior associates typically bill at rates far lower than $700 and $600 per hour, respectively. *See Schuman v. Aetna Life Ins. Co.*, No. 3:15-cv-01006 (SRU), 2017 WL 2662191, at *8–9 (D. Conn. June 20, 2017) (concluding that rates of $375 per hour for a partner and $200 per hour for a junior

associate were appropriate in an ERISA case and referring to an affidavit by an ERISA litigator with 25 years of experience who routinely charges clients $425 per hour); *Trustees of the I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.*, No. 3:11-CV-709 (CSH), 2015 WL 3581011, at *5 (D. Conn. June 5, 2015) (accepting the negotiated hourly rate of $250 for ERISA attorneys who practiced in the field for 14 years and 5 years); *Dwinnell v. Fed. Express Long Term Disability Plan*, No. 3:14-CV-01439 (JAM), 2017 WL 1371254, at *2 (D. Conn. Apr. 14, 2017) (finding $375 per hour rate reasonable for an ERISA attorney based on hourly rates of other attorneys in the field with similar levels of experience).

Attorney Kantor has focused on ERISA litigation since at least 1997, whereas Senior Associate Sessions has more than twelve years of experience litigating ERISA and/or insurance matters. Kantor Decl. ¶¶ 2, 7. Based on their years of experience in the field but mindful of the prevailing rates in the district, I find that hourly rates of $425 for Attorney Kantor and $375 for Attorney Sessions are appropriate.

As for reasonable hours expended, Attorney Kantor seeks to be compensated for 8.7 hours of work and Attorney Sessions for 84.1 hours of work. Kantor Decl. at 90. Defendant argues the Court should limit its consideration of any hours to those performed before Defendant offered to accept a voluntary remand. Def. Mem. at 16. The Court declines to do so as Defendant has not shown that Plaintiff's refusal to voluntarily remand the case was in bad faith or otherwise an attempt to "pad" billing hours. Plaintiff claims that every effort was made to keep the fee request reasonable, including not asking "to be compensated for her time in preparing her motion for [attorney's] fees or this reply." Pl. Reply at 10. Because Plaintiff is not asking for fees related to preparing this motion, the Court will deduct such fees from its calculations of reasonable hours. Namely, the Court

will not include the 5.9 total hours billed by Attorney Sessions on the motion for attorney's fees, beginning with the July 27, 2018, email exchange with Plaintiff regarding said motion.  *See* Kantor Decl. at 90.  The itemized list of billed tasks seems appropriate in all other respects.  Accordingly, Defendant must compensate for 8.7 hours of Attorney Kantor's work and 78.2 hours of Attorney Sessions's work.

To calculate the total lodestar, the Court will multiply Attorney Kantor's adjusted rate of $425 by the 8.7 hours billed and Attorney Sessions's adjusted rate of $375 by 78.2 hours billed to reach $33,022.50 in reasonable attorney's fees.  In addition, Plaintiff has not asked for or demonstrated any grounds to suggest that "an upward or downward adjustment [to the lodestar amount] is required." *Parris v. Pappas*, 844 F. Supp. 2d 262, 270 (D. Conn. 2012).  The Court will therefore grant Plaintiff $33,022.50 in reasonable attorney's fees.

Plaintiff also seeks an award for her costs in this action, totaling $550.  Pl. Mem. at 8.  Defendant does not challenge this amount, and so the Court will also grant Plaintiff $550 for costs.

Having considered all the contentions of counsel, whether or not specifically discussed *supra*, the Court decides this motion for attorney's fees in the manner set forth in the following Conclusion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Attorney's Fees and Costs [Doc. 77] is GRANTED AS MODIFIED.  The Clerk is directed to enter judgment in favor of Plaintiff against Defendant.

That judgment, as provided for in 29 U.S.C. § 1132(g), shall award to Plaintiff, to be paid by Defendant, the following amounts:

(A)   $33,022.50 in reasonable attorney's fees; and

    (B)    $550 in costs of the action,

for a total award of $33,572.50. The judgment will bear interest at the legal rate from the date of entry to the date the judgment is paid.

Upon entering judgment in accordance with this Ruling, the Clerk is directed to close the file.

It is SO ORDERED.

Dated: New Haven, Connecticut
         January 8, 2019

                                        */s/ Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge